1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LAURA BREESER; JOHN CHARLES BREESER, JR., wife and husband, on behalf of themselves and on behalf of their four minor children, A.B., J.B., D.B., and M.B.,<br>　　　　Plaintiffs,<br><br>vs.<br><br>THE MENTA GROUP, INC., NFP; SPECIAL EDUCATION SERVICES d/b/a SOUTHWEST EDUCATION CENTER; ELIZABETH ANN CONRAN and her husband, RORY CONRAN; KENNETH CARWELL and his wife, KATHRYN CARWELL; WILLIAM ANDREW HUBBLE and his wife, KIM HUBBLE; JOHN and JANE DOES I-X; BLACK and WHITE CORPORATIONS I-X,<br>　　　　Defendants. | No. 2:10-CV-01592-PHX-JAT<br><br>**ORDER** |

In response to Plaintiffs' First Amended Complaint ("FAC"), filed on October 29, 2010 (Doc. 20), Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on November 24, 2010 (Doc. 24). Plaintiffs filed their Response on January 10, 2011 (Doc. 32), and Defendants filed their Reply on January 21, 2011 (Doc. 35). The Court now rules on the Motion.

**I. Background.**

According to the FAC, Plaintiff Laura Breeser was a decades-long employee of The Menta Group, Inc. ("Menta") and its affiliates (Doc. 20, ¶ 11), which, among other

1 things, "provides services to children" in special education programs sponsored by various school districts in Arizona. (*Id.*, ¶ 12). When the events underlying this action occurred, Laura Breeser served Menta by running its Arizona operation. (*Id.*, ¶ 12).

Laura Breeser suffered an on-the-job injury in late November, 2008, while attempting "to restrain an unruly student." (*Id.,* ¶ 13). Following her injury, the Defendants placed Laura Breeser on sabbatical. (*Id.*). In early February, 2009, Laura Breeser's employers provided her with a Separation and Release Agreement, which would end her employment and pay her salary and benefits through June 30, 2009. (*Id.,* ¶ 14). Plaintiffs claim that, prior to her sustaining an on-the-job injury, Laura Breeser notified her employers, the Defendants, that they were in violation of several Arizona laws. (*Id.*, ¶ 16).

On October 29, 2010, Laura Breeser and her fellow Plaintiffs filed their FAC, alleging seven counts against Defendants. (Doc. 20). These counts, as stated in the FAC, consist of (1) Wrongful Termination Based on Violation of Public Policy; (2) Intentional or Reckless Infliction of Emotional Distress; (3) Acting in Concert to Injure Plaintiffs; (4) Fraud; (5) Defamation and Holding Up to a False Light; (6) Loss of Consortium; and (7) Punitive or Exemplary Damages.

Defendants argue that all counts alleged by Plaintiffs fail to state a claim upon which relief can be granted. (Doc. 24, 2:21-15:4). Additionally, Defendants argue that Plaintiffs failed to sufficiently plead liability against the individual Defendants and, therefore, all named individual Defendants should be dismissed as a matter of law. (*Id.,* 14:19-27). In their response to Defendants' Motion to Dismiss, Plaintiffs conceded that they currently lack sufficient facts to satisfy their false light claim (Doc. 32, 16:9-10), although they retained their defamation claim (*id.*, 15:23), and withdrew their punitive damages claim as a separate cause of action. (*Id.* 17:5-6). Accordingly, both the false light claim and the punitive damages claim are dismissed.

## II. Legal Standard.

The Court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §1202, pp. 94, 95(3d ed. 2004)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's

- 3 -

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**III. Analysis and Conclusion.**

The Court will examine each of Plaintiffs' claims individually and determine whether the respective claims survive the Defendants' challenges pursuant to Rule 12(b)(6). The Court need not microscopically examine every alleged fact offered in support of each claim. As previously noted, a claim survives a 12(b)(6) motion if the facts alleged, taken as true, support the plausibility of the Plaintiffs' claim. *Iqbal*, 129 S.Ct. at 1949. Furthermore, it is the *factual allegations* of the Plaintiffs' Complaint that "must be sufficient to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Accordingly, the Court will decide the survival of each Count by determining whether the factual allegations, if taken as true, support a valid claim and put the Defendants on fair notice of such a claim.

**A. Count One: Wrongful Termination Based on Violation of Pubic Policy.**

Regarding the wrongful termination claim, the Court finds that Plaintiffs stated a claim upon which relief can be granted. In their Motion, Defendants correctly point out that Plaintiffs' FAC fails to name the particular statute under which Plaintiffs' claim arises. (Doc. 24, 2:21-3:13). In their Response, Plaintiffs acknowledge their failure to name the statute under which they brought their claim, but argue such a statement is not required. (Doc. 32, 2:6-16).

The Court is sympathetic to Defendants' argument that plaintiffs should clearly state the law that defendants are accused of violating. But, for this particular claim,

1  wrongful termination of employment under Arizona law, the Court agrees with Plaintiffs
2  that stating the specific statute under which they brought their action is unnecessary. As
3  Defendants acknowledge (Doc. 24, 2:26 -3:9), A.R.S. § 23-1501 superseded *Wagenseller*
4  *v. Scottsdale Mem'l Hosp.* 147 Ariz. 370 (1985), previously the controlling authority on
5  common law wrongful termination in Arizona. *Chaboya v. Am. Nat'l Red Cross*, 72
6  F.Supp.2d 1081, 1092 (D. Ariz. 1999). Therefore, when a plaintiff brings an action
7  claiming wrongful termination, only one statute is at issue. *Id.*; ARIZ. REV. STAT. ANN.
8  § 23-1501. Accordingly, the law that Defendants are accused of violating is clear.

9  In Arizona, employees have a claim against their employer for termination of
10 employment if, *inter alia*, the employee is terminated in retaliation for disclosing to the
11 employer his or her knowledge or reasonable belief that the employer has violated, is
12 violating, or will violate Arizona's constitution or statutes. ARIZ. REV. STAT. ANN. § 23-
13 1501(3)(c)(ii). Plaintiffs allege that Defendants terminated Laura Breeser's employment
14 in retaliation for her disclosing to Defendants, her employers, that on her knowledge or
15 belief, Defendants were possibly violating the laws of Arizona. (Doc. 20, ¶ 16 j; *Id.,* ¶
16 18(i), (ii), & (iii)). Therefore, Defendants were given fair notice of the claim against
17 them.

18 The remaining issue as to Count One is whether Plaintiffs allege facts that show
19 grounds upon which their claim for wrongful termination rests. Plaintiffs' FAC denotes
20 myriad examples of alleged wrongdoing on the Defendants' part that were brought to
21 Defendants' attention by Laura Breeser.[1]  Instead of examining the multiple factual
22 allegations set forth in the FAC, the Court offers the following few allegations in support
23 of its finding that Plaintiffs satisfactorily stated a claim for which relief can be granted.
24 In doing so, the Court takes no position on the legal merits of Plaintiffs' allegations

---

[1] The Court notes Plaintiffs' failure to state the particular statutes that Laura Breeser allegedly told her employers they were violating. However, Plaintiffs offered factual allegations that, if true, support the required elements of A.R.S. § 23-1501(3)(c)(ii). The Court therefore finds the allegations sufficient to survive a motion to dismiss.

- 5 -

against Defendants.

Plaintiffs assert that Defendants "admonished" Laura Breeser to dispense medications to school children, and that Laura Breeser advised her employers that "it was illegal for non-medically competent people to dispense medications (including prescribed narcotics)." (Doc. 20, ¶ 16 e). Indeed, Arizona law requires *any person* who dispenses *any* controlled substance to obtain a proper license or permit and to be a registrant under the federal Controlled Substances Act. ARIZ. REV. STAT. ANN. § 36-2522(A)(1) & (2).

Plaintiffs also assert that Laura Breeser disclosed to the Defendants, her employers, that they would commit fraud on the state of Arizona if they billed the state for transportation services that never took place. (Doc. 20, ¶ 16 f; *Id.*, ¶ 16 g). In Arizona, "a person commits deceptive business practices if in the course of engaging in a business, occupation or profession such person recklessly . . . [s]ells . . . or delivers less than the represented quantity of any commodity or service." ARIZ. REV. STAT. ANN. § 13-2202(A)(2).

Furthermore, Plaintiffs allege that Laura Breeser informed Defendants, "on more than one occasion," that Defendants "needed to 'change' their practices that could be construed as violations of [Arizona] laws." (Doc. 20, ¶ 16 l).

These factual allegations, viewed in a light most favorable to the drafter of the FAC, and taken as true, put Defendants on fair notice of Plaintiffs claim under A.R.S. § 23-1501(3)(c)(ii) and the grounds upon which the claim rests. Therefore, the above-referenced factual allegations are sufficient to raise a right to relief above a speculative level regarding Plaintiffs' claim that Defendants terminated Laura Breeser's employment in violation of Arizona's public policy as expressed in A.R.S. § 23-1501(3)(c)(ii). Accordingly, as to Count One, Defendants' Motion to Dismiss is denied.

**B. Count Two: Intentional or Reckless Infliction of Emotional Distress.**

As regards Plaintiffs' infliction of emotional distress claim, the Court finds that

Plaintiffs failed to state a claim upon which relief can be granted. To survive a motion to dismiss, such a claim must allege facts that plausibly support that (1) the conduct by the defendant was "extreme" and "outrageous"; (2) the defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct; and (3) severe emotional distress occurred as a result of defendant's conduct. *Mintz v. Bell Atlantic Sys. Leasing*, 183 Ariz. 550, 553-54 (Ct. App. 1995) (internal citations omitted). As Plaintiffs state (Doc. 32, 8:9-12), one of the issues examined by courts and juries to determine outrageous conduct is the "defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition." *Lucchesi v. Stimmell*, 149 Ariz. 76, 79 (1986). However, although conduct, "would otherwise be extreme and outrageous, [it] may be privileged under the circumstances." *Mintz*, 183 Ariz. at 554. "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. g). Toward that end, another relevant factor is whether the alleged conduct served a legitimate business interest. *Id.*

As Defendants correctly point out, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." (Doc. 24, 6:26-7:1) (citing *Mintz*, 183 Ariz. at 554). Additionally, Defendants cite numerous cases that reflect the anomalousness of showing conduct that rises to a level of outrageousness in the employment context**.** (Doc. 35, 4:11-5:9). Plaintiffs, in their Response, dismiss this point as "irrelevant" because the Arizona Supreme Court, in *Lucchesi*, stated that "as 'extreme and outrageous conduct' and 'severe emotional distress' are not readily capable of precise legal definition, a case-by-case analysis is required." 149 Ariz. at 79; (Doc. 32, 8:5-8). However, where *Mintz* dealt with a motion to dismiss an infliction of emotional

- 7 -

distress claim in an *employment context*, 183 Ariz. at 552, and, thus, is analogous to the instant case, *Lucchesi* involved a motion for summary judgment on an infliction of emotional distress claim in the context of medical malpractice. *Lucchesi*, 149 Ariz. at 77.

The *Mintz* court found that, in determining outrageousness on an employer's part, the employer must engage in conduct that would obviously affect the plaintiff's *particular* susceptibility to emotional distress. 183 Ariz. at 554. For example, an employer's conduct rises to outrageousness when the employer assigns an employee to work at heights when the employer knows that the employee has a fear of heights. *Id.*

Here, Plaintiffs assert that Defendants knew that Laura Breeser was particularly susceptible to emotional distress by reason of some physical or mental condition because Defendants were aware that Laura Breeser was "physically injured, was suffering from job-related depression and had very high blood pressure for over a year prior to her termination." (Doc. 32, 8:12-14). The Court will not consider the allegations that Defendants knew that Laura Breeser suffered from job-related depression and had high blood pressure, as Plaintiffs did not allege these facts in the FAC. Although the physical injury is cited in their FAC, Plaintiffs' fail to make any factual allegations pertaining to Defendants' conduct in relation to Laura Breeser's physical injury that may be considered outside the province of legitimate business interests. (Doc. 20, ¶ 22). Additionally, Plaintiffs' allegations fall far short of describing behavior that went beyond all bounds of decency. *Johnson v. McDonald*, 197 Ariz. 155, 160 (Ct. App. 1999) ("[P]laintiff must show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'") (internal citations omitted).

Plaintiffs also fail to state any result evidencing the claimed emotional distress. (*Id.*). Plaintiffs suggest that Defendants engaged in outrageous conduct because, after Laura Breeser suffered a physical injury on the job, Defendants required Laura Breeser, against her wishes, to go on workman's compensation and take a sabbatical. (*Id.,* ¶ 13;

Doc. 32, 9:11-15). Additionally, Plaintiffs' cite the Defendants' delivery of the "Separation and Release Agreement" in the wake of Laura Breeser's injury and sabbatical as supporting the claim of outrageous conduct. (*Id.*, 9:17-20). These allegations do not rise to the requisite level of outrageousness as such actions serve legitimate business purposes. *Mintz*, 183 Ariz. at 554; RESTATEMENT (SECOND) OF TORTS § 46, cmt. g, illus. 14 (1965). Plaintiffs' acknowledge that, Laura Breeser's job required her, at times, to engage in "physical management" during "crisis situations," and that Defendants put Laura Breeser on "medical sabbatical" out of concern for her health stemming from her injury. (Doc. 20, ¶ 16 k). Therefore, requiring Laura Breeser to take a sabbatical while injured served a legitimate business purpose. An employer's providing an employee with a Separation and Release agreement also falls within the scope of legitimate business purposes, as does, by definition, workman's compensation.

Plaintiffs further state that Laura Breeser enjoyed a "special relationship of trust and confidence with said Defendants," (Doc. 20, ¶ 12)**,** the inference being that Laura Breeser suffered grief that naturally and normally follows the loss of such friendship. This susceptibility to emotional distress - experiencing grief over a personal loss - is not particular to Laura Breeser. Accordingly, as to Count Two, Defendants' Motion to Dismiss is granted.

**C. Count Three: Acting In Concert to Injure Plaintiffs.**

Although described as "acting in concert to injure Plaintiffs," this claim is for common law civil conspiracy. (Doc. 20, ¶¶ 23-24; Doc. 32, 11:25-12:20). As to this Count, the Court finds that Plaintiffs failed to state a claim upon which relief can be granted

A claim for civil conspiracy, requires a plaintiff to first properly allege a claim for an underlying tort. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 498 (2002). Plaintiffs must allege facts showing the existence of a tacit understanding to commit at least one of the underlying

torts. *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F.Supp.2d 1144, 1150 (D.Ariz. 2009). "The existence of a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances; however, a plaintiff must allege specific facts which support the inference of an agreement." *S. Union Co. v. Sw. Gas Co.*, 165 F.Supp.2d 1010, 1021 (D. Ariz. 2001) (internal citations omitted). However, even if the alleged agreement is inferred, "a claim for civil conspiracy must include an actual agreement, *proven by clear and convincing evidence*." *Wells Fargo Bank*, 201 Ariz. at 449 (emphasis added).

Because Plaintiffs' claims for wrongful termination and defamation survive Defendants' Motion to Dismiss, Plaintiffs' FAC satisfies the threshold requirement of claiming one or more underlying torts. The remaining issue, then, is whether Plaintiffs properly pleaded facts sufficient to put Defendants on notice of the grounds on which the civil conspiracy claim rests. *Twombly*, 550 U.S. at 555; *S. Union Co.*, 165 F.Supp.2d at 1021. In particular, the Court must determine whether Plaintiffs alleged specific facts that at least support the inference of an agreement on the Defendants' part. *Wells Fargo Bank*, 201 Ariz. at 449. Plaintiffs assert that Defendants "each acted in concert, one with the other to achieve an improper purpose by committing wrongful acts[,] . . . [including] an agreement to wrongfully terminate Plaintiff Laura Breeser . . . ." (Doc. 20, ¶ 24). Plaintiffs support this assertion by stating that "Defendants *decided* to terminate [Laura Breeser's] employment," that "Defendants *knew* that [] Laura Breeser [was aware] of [Defendants'] possible illegal actions, and that [Defendants] *feared* [] Laura Breeser would discover fully their actions." (*Id.*, ¶ 18) (emphasis added). But, in their defamation claim, Plaintiffs fail to show *any* facts, conclusory or otherwise, alleging an agreement among Defendants to defame Laura Breeser. (*Id.*, ¶ 30).

Despite Plaintiffs' statement alleging a civil conspiracy (*id.*, ¶¶ 23-24), they fail to allege facts sufficient to comply with Rule 8's pleading standard. *Twombly*, 550 U.S. at 555-56. While Plaintiffs offer legal conclusions that Defendants engaged in a civil

- 10 -

conspiracy, Plaintiffs' Complaint does not include factual allegations as to Defendants' actions giving rise to such claims. Plaintiffs did not adequately allege an agreement on the part of Defendants to commit any tort. The Court therefore grants Defendants' Motion to Dismiss as to Count Three.

**D. Count Four: Fraud.**

To properly allege fraud, a plaintiff "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Under Rule 9(b), particularity means "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (declaring that particularity "means the who, what, when, where, and how."). Additionally, Arizona case law holds that "actionable fraud cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intent not to perform." *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 426 (Ct. App. 1982).

To support their fraud claim, Plaintiffs state that Defendants engaged in fraud because they *promised* Laura Breeser fair treatment in her "compensation, continued employment, [career] advancement, and that she would have a long-term career." (Doc. 20, ¶ 26). Plaintiffs go on to assert that Defendants *intended* to keep these promises only if certain conditions were met by Laura Breeser, and that Defendants led Laura Breeser to believe that Defendants "would treat her in good faith and fairly," but ultimately Defendants acted contrary to their intentions and promises. (*Id.* ¶¶ 26-27). In support of these general allegations, Plaintiffs allege that Defendants "represented to [] Laura Breeser" that, upon meeting particular conditions, she would receive "full-time employment until she chose to retire; a salary of at least $94,000 per year, plus continuing existing benefits . . . ; a pension of a lump-sum payment of $400,000; and life insurance in a commensurate amount . . . ." (*Id.*, ¶ 28). Plaintiffs allege that these "promises . . .

were false at the time made as the Defendants had no intention of keeping those promises." (*Id.* ¶ 28). These assertions rely on alleged unfulfilled promises, expressions of intention, and statements concerning future events. Furthermore, the assertion that Defendants never intended to keep their alleged promises is merely consistent with the Defendants' liability and, therefore, falls short of the proper pleading standard. *Iqbal*, 129 S.Ct. 1937 at 1949 (internal citations omitted). Accordingly, regarding Plaintiffs' fraud claim, the Court grants Defendants' Motion to Dismiss.

### E. Count Five: Defamation.

Regarding defamation, Plaintiffs stated a claim upon which relief can be granted. "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 174 Ariz. 201, 203-204 (1993) (quoting *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)). One who publishes such a false and defamatory communication concerning a private person is subject to liability only if the publisher (1) knows that the statement is false and that it defames the other; (2) acts in a reckless disregard of these matters; or (3) acts negligently in failing to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315 (1977). Additionally, "[i]n Arizona, a publication which impeaches the honesty, integrity, or reputation of a person is libelous per se." *Id.* at 316.

In support of their defamation claim, Plaintiffs allege that Defendants "stated to third parties matters that were false, which they knew to be false, and which directly injured the reputation of . . . Laura Breeser." (Doc. 20, ¶ 30). More specifically, Plaintiffs assert that Defendants consistently and falsely reported to parents of children enrolled at Defendants' schools that Laura Breeser abandoned her position when, in fact, Defendants required Laura Breeser to accede to a medical sabbatical for her benefit and welfare against her own will and judgment. (*Id.*, ¶¶ 29-30). Plaintiffs further claim that Defendants made similar false statements about the circumstances of

Laura Breeser's employment and termination to her prospective employers. (*Id.*, ¶ 30). Therefore, if taken as true, Plaintiffs make factual allegations that show that Defendants made statements about Laura Breeser that Defendants knew were false and defamatory, and that Defendants acted in reckless disregard to the effects their statements would have on Laura Breeser. Additionally, the suggestion to parents of enrolled students and to potential employers that Laura Breeser simply walked away from her responsibilities and obligations impeaches Laura Breeser's integrity and reputation within her vocational field, which, in Arizona, is libelous per se. Therefore, Plaintiffs stated a claim upon which relief can be granted. Accordingly, the Court denies Defendants Motion to Dismiss as regards Plaintiffs' claim for defamation.

**F. Count Six: Loss of Consortium.**

Here, Plaintiffs fail to state a claim upon which relief can be granted. In Arizona, parties may recover for loss of consortium. *Nunsuch ex rel. Nunsuch v. U.S.*, 221 F.Supp.2d. 1027, 1035 (D. Ariz. 2001) (citing *City of Glendale v. Bradshaw ex rel. Bradshaw*, 108 Ariz 582, 583-84 (1972)). A claim for loss of consortium between a husband and a wife consists of the loss of "the society, companionship, conjugal affections and assistance of the other; the so-called sentimental elements of consortium, to which each has the right." *Id.* A cause of action brought by a child for loss of consortium with a parent is limited to "when the parent suffers serious, permanent, disabling injury rendering the parent unable to provide love, care, companionship, and guidance to the child." *Villareal v. State, Dept. of Transp.*, 160 Ariz. 474, 480 (1989). Furthermore, "[t]he parent's mental or physical impairment must be so overwhelming and severe that the parent-child relationship is destroyed or nearly destroyed." *Id.* (citing *Hay v. Med. Ctr. Hosp. of Vt.*, 496 A.2d 939, 941 (Vt. 1985) (finding that a child's loss of consortium claim was legitimate when the parent was rendered permanently comatose); *Theama by Bichler v. City of Kenosha*, 344 N.W.2d 513, 515 (Wis. 1984) (declaring that a father's permanent mental and physical injuries essentially deprived his minor children of any further parent-child exchange)).

1 Plaintiff John Breeser claims loss of consortium with his wife, Laura Breeser, as 2 a result of "Defendants' wrongful conduct." (Doc. 20, ¶ 33). To this point, Plaintiffs 3 allege that John Breeser "was deprived of the love and affection, society, companionship 4 and support of Plaintiff Laura Breeser as a result of the wrongful acts of the Defendants." 5 (*Id.*). Despite Plaintiffs incorporation of all preceding paragraphs into their loss of 6 consortium claim, they still fail to allege facts attesting to the plausibility of this claim. 7 Plaintiffs fail to state the particular injury suffered by Laura Breeser that underlies the loss 8 of consortium claim. (*Id.*). Plaintiffs also fail to allege any facts supporting the claimed 9 deprivation of "love and affection, society, companionship, and support" suffered by John 10 Breeser. (*Id.*). Thus, Plaintiffs' allegations pertaining to John Breeser's alleged loss of 11 consortium are conclusory, offering no grounds on which this claim rests, and fall short 12 of the pleading standard set out in *Twombly*. 550 U.S. at 555.

13 Plaintiffs also allege that the Breesers' minor children suffered loss of consortium 14 relating to their mother, Laura Breeser, stemming from her injuries. (Doc. 20, ¶ 34). 15 According to Plaintiffs' FAC, Laura Breeser's injuries, which the FAC fails to specify, 16 resulted from the loss of her home, her unemployment, and her inability to financially 17 support her family. (*Id.*). Furthermore, Plaintiffs seemingly allege a loss of consortium 18 resulting from the ending of, or the damage caused to, the Breeser children's relationship 19 with Defendant Elizabeth Ann Conran. (*Id.*). While losing one's home, suffering 20 unemployment, enduring financial hardship, and ended or strained relationships are 21 genuinely sad and difficult occurrences, such occurrences are not "serious, permanent, 22 disabling injur[ies] rendering the parent unable to provide love, care, companionship, and 23 guidance to the child." *Villareal*, 160 Ariz. at 480. Therefore, the Court finds that 24 Plaintiffs' loss of consortium claim, as to both John Breeser and the Breeser children, fails 25 to state a claim upon which relief can be granted. Accordingly, the Court grants 26 Defendants' Motion to Dismiss Plaintiffs' loss of consortium claim.

27 **G. Allegations Against Individual Defendants.**

28 Defendants argue that, although Plaintiffs brought claims against particular

individual Defendants in addition to the corporate Defendants, Plaintiffs "fail[ed] to identify specific conduct of the individual Defendants sufficient to form individual liability under any of [their] claims." (Doc. 24, 14:19-27). Defendants therefore request that the Court dismiss these claims as a matter of law. (*Id.*). Plaintiffs assert that they did allege conduct by individuals sufficient to form individual liability (Doc. 32, 17: 9-12). The only particular allegation that Plaintiffs made against the individual Defendants pertained to the conspiracy claim, where Plaintiffs alleged that each individual Defendant agreed to wrongfully terminate Laura Breeser. (Doc. 20, ¶ 23-24). This general allegation does not set forth the action of any specific individual. The Court therefore finds that Plaintiffs failed to sufficiently plead liability for the individually named Defendants and dismisses said Defendants from this matter.

Accordingly,

**IT IS ORDERED** Granting in part and Denying in part Defendants' Motion to Dismiss (Doc. 24). It is ordered Granting the Motion with regard to Counts Two, Three, Four, Six, Seven, and the Claim for Holding Up to a False Light. It is ordered Denying the Motion with regard to Count One and the Defamation Claim found in Count Five.

DATED this 18th day of April, 2011.

_____
James A. Teilborg
United States District Judge