**WO**

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Breeser; et al., | Case No. CV 10-1592-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| The Menta Group, Inc., NFP; et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (Doc. 74). Defendants have also filed a Statement of Facts in Support of their Motion for Summary Judgment. (Doc. 75). Plaintiffs have filed a Response to Defendants' Motion (Doc. 81), a controverting statement of facts disputing Defendants' statement of facts (Doc. 85), and another controverting statement of facts adding additional facts that allegedly establish a genuine issues of material fact (Doc. 86). Finally, Defendants have filed a Reply. (Doc. 90). The Court has considered the pleadings and now rules on the Motion.

## I.    BACKGROUND

This suit arises out of the termination of Plaintiff Laura Breeser's ("Breeser") employment by Defendant Special Education Services ("SES"). Breeser worked for SES for approximately twenty-nine years before SES terminated her employment. The position Breeser was terminated from was Principal of the Southwest Education Center ("SWEC") in Phoenix, Arizona. As an initial matter, the Court must determine the undisputed material facts in this case.

**A.     The Parties' Statements of Fact**

Local Rule of Civil Procedure ("LRCiv") 7.2(e)(1) requires motions and the responsive pleadings to be no more than seventeen pages.  Local Rule 56.1(a) requires that a party moving for summary judgment file a separate statement of facts, in addition to the motion, setting forth each material fact on which the party relies in support of their motion.  LRCiv 56.1(a).  In addition, the rule requires that each material fact be numbered in a separate paragraph and refer to admissible portions of the record for that fact.  *Id*.  Rule 56.1(b) requires the party opposing the motion for summary judgment, the non-movant, to file a controverting statement of facts in addition to their response to the motion for summary judgment.  LRCiv 56.1(b).  In the controverting statement of facts the non-movant must address every one of the material facts that the moving party put forth.  *Id*.  Further, the rule requires that any additional facts that establish a genuine issue of material fact that the non-movant proffers must "be set forth in [ ] separately numbered paragraph[s] and must refer to [ ] specific admissible portion[s] of the record where the fact[s] find[ ] support."  *Id*.

Defendants filed their Motion for Summary Judgment in compliance with LRCiv 7.2(e)(1).  *See* (Doc. 74).  Defendants also filed an accompanying separate statement of facts pursuant to LRCiv 56.1(a), which includes seventy separately numbered material facts spanning eleven pages.  *See* (Doc. 75).  Plaintiffs filed a Response pursuant to LRCiv 7.2(e)(1).  *See* (Doc. 81).  Then Plaintiffs filed two separate statements of facts.  (Doc. 85); (Doc. 86).

**1.     Plaintiffs' "Statement of Facts Establishing a Genuine Issue of Material Fact" (Doc. 86)**

One of the statements of fact that Plaintiffs have filed is what they call "Plaintiff's [sic] Statement of Facts Establishing a Genuine Issue of Material Fact" (the "PSOFE").  (Doc. 86).  This statement of facts is two pages long and is merely a list of five attachments appended to the PSOFE.  *See* (*id*.).  The PSOFE is apparently additional facts that allegedly establish a genuine issue of material fact as discussed in LRCiv 56.1(b).

LRCiv 56.1(b) clearly requires any additional facts that the non-movant wants to

add, "be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the facts find support." Plaintiffs have failed to follow this rule.

Plaintiffs have just proffered the admissible portions of the record and nothing more. The PSOFE is only a list of five declarations of five different parties. *See* (Doc. 86 at 1-2). Plaintiffs have not stated what additional facts they are adding, how these additional facts create a genuine issue for trial, Plaintiffs have not numbered these additional facts in separate paragraphs, nor have Plaintiffs cited where in the admissible portion of the record the facts find support. Ostensibly Plaintiffs expect the Court to pick through the one hundred and fifty-three pages of declarations to determine if any parts of them establish genuine issues for trial. Plaintiffs refer to the PSOFE in their Response in an attempt to establish additional facts, but this is not what LRCiv 56.1(b) requires. LRCiv 56.1(b) requires additional facts to be set out in separately numbered paragraphs in the controverting statement of facts and then these additional facts must refer to admissible portions of the record.

Failure of the non-movant to comply with LRCiv 56.1(b) is ground for the Court to disregard a controverting statement of facts and deem as true the moving party's separate statement of facts in support of the motion for summary judgment. *Szaley v. Pima Cnty.*, 371 F. App'x 734, 735 (9th Cir. 2010). In addition, as discussed below, *see infra* Section II.B.3, this Court finds only one statement in these additional facts is relevant to Defendants' Motion and that statement cites the wrong portion of the record.

### 2. Plaintiffs' Statement of Facts Disputing Defendants' Statement of Facts (Doc. 85)

Plaintiffs have also filed a controverting statement of facts disputing Defendants' statement of facts. (Doc. 85). This controverting statement of facts is ninety-two pages long and is also deficient under LRCiv 56.1(b). *See* (*id.*). While LRCiv 56.1(b) does not stipulate a page limit for the separate controverting statement of facts, "LRCiv 56.1 'does not permit explanation and argument supporting the party's position to be included in the . . . statement of facts. Argument may be made in the response or reply brief on the motion for summary judgment, but within the page limits.'" *Marceau v. Int'l Broth. of Elec. Workers*, 618 F.

Supp. 2d 1127, 1141 (D. Ariz. 2009) (quoting *Pruett v. State*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009)).

In the Reply, Defendants have moved to strike fifty-seven of the seventy controverting facts that Plaintiffs put forth for containing arguments properly asserted in the Response and for offering controverting facts not supported by citation to admissible evidence or by cited testimony. (Doc. 90 at 2-4). The Court finds Plaintiffs' controverting statement of facts attempts to subvert the seventeen page limit for responsive memoranda established in LRCiv 7.2(e)(1) and add substantive argument to Plaintiffs' claims instead of only material facts as required by LRCiv 56.1(b).

Symptomatic of facts that are argumentative is Plaintiffs' denial of Defendants' material fact 10. *See* (Doc. 85 at 5-28). Defendants' material fact 10 is Breeser's responsibilities at SWEC. (Doc. 75 at 3 ¶ 10). Material fact 10 lists ten items that Breeser was responsible for in the position she was terminated from and spans eight lines, which includes four lines of citations to the record supporting the responsibilities listed. *Id*. Plaintiffs' denial of this material fact is twenty-two *pages* of argument in narrative form devoid of a single heading or numbered paragraph signifying an additional contradicting material fact. (Doc. 85 at 5-28)[1]. Indeed, Plaintiffs' twenty-two page so called denial of material fact 10 is immediately belied by the second sentence in it where Plaintiffs conspicuously state that "Mrs. Breeser admits that she testified as indicated in her deposition as cited by Defendant" in material fact 10. (Doc. 85 at 5).

Even if the Court were to consider Plaintiffs' twenty-two page retort, in addition to being argumentative, it presents page after page of additional factual allegations. Assuming, arguendo, these additional facts create an issue of material fact, Plaintiffs have failed to abide by Rule 56.1(b) and separately number each material fact in this statement of facts.

A district court does not have a duty to search for evidence that would create a factual

---

[1] Similarly, Plaintiffs' denial of Defendants' material fact 12 is six pages long (Doc. 85 at 29-35), the denial of material fact 26 is eight pages long (*id*. at 43-50), the denial of material facts 52 and 61 are both over five pages long (*id*. at 72-77, 84-89). Like Plaintiffs' denial of material fact 10, these denials are argumentative and none of these denials include separately numbered paragraphs for additional facts added to them pursuant to LRCiv 56.1(b).

dispute.  *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (citing *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be "unfair" to the district court to require it "to search the entire record" if a party fails to "disclose where in the record the evidence for [the factual claims] can be found")).  To borrow an analogy used by the Ninth Circuit Court of Appeals,

> When reading [Plaintiffs' ninety-two page controverting statement of facts], one wonders if [Plaintiffs], in [their] own version of the "spaghetti approach," ha[ve] heaved the entire contents of a pot against the wall in hopes that something would stick.  [The Court] decline[s], however, to sort through the noodles in search of [Plaintiffs'] claim.  As the Seventh Circuit observed in its now familiar maxim, "[j]udges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

In addition to subverting the page requirement for Plaintiffs' arguments, many of Plaintiffs' proffered facts are not supported by cited testimony or citation to admissible evidence.  Characteristic of these facts is Plaintiffs' denial of Defendants' material fact 61.  *See* (Doc. 85 at 84-89).  Defendants' material fact 61 establishes that Tammy Patrick asked Defendant William Andrew Hubble ("Hubble") if Breeser quit, and Hubble responded "yes."  (Doc. 75 at 10 ¶ 61).  Defendants cite Tammy Patrick's deposition for this fact.  (*Id.*) (citing Doc. 75-3 at 85-86).  Turning to the deposition, which Defendants properly directed the Court to; this is exactly what Tammy Patrick stated.  (Doc. 75-3 at 85-86).  Yet, Plaintiffs expressly deny this fact and state "[t]he citation of the record is incomplete and does not support the statement of fact alleged."  (Doc. 85 at 84 ¶ 61).  Plaintiffs then proceed to unpersuasively argue this point over the following five pages.  *See* (*id.* at 84-89).  As part of their argument, Plaintiffs state "Mrs. Breeser's declaration (which is a separate part of the record) makes it clear . . . ."  (*Id.* at 88).  Yet, Plaintiffs do not cite Breeser's declaration or direct the Court to where in the record Breeser's declaration is located.

As courts in the Seventh Circuit have explained, "[w]hen analyzing Local Rule

56.1(b) statements [a similar local rule to the one this Court operates under], courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)). "Rather, fact statements are designed to 'assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposes to prove a disputed fact with admissible evidence.'" *Id*. (quoting *Bordelon*, 233 F.3d at 527 (citation omitted)). "Opinion, suggested inferences, legal arguments and conclusions are not the proper subject matter of a Local Rule 56.1 statement. Including legal arguments in a 56.1 statement is wholly improper, redundant, unpersuasive and irksome; in short, it advances neither the interests of the parties nor of the court." *Id*. (citing *Servin v. GATX Logistics, Inc*., 187 F.R.D. 561, 562 (N.D. Ill. 1999) (citation omitted); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (legal argument is improper within a Local Rule 56.1 statement of facts); *Judson Atkinson Candies, Inc. v. Latini–Hohberger*, 476 F. Supp. 2d 913, 922 (N.D. Ill. 2007) (legal argument is improper within a Local Rule 56.1 statement of facts)). "It is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Id*. (citing *Sullivan v. Henry Smid Plumbing & Heating Co., Inc*., No. 04C5167, 2006 WL 980740, at *2 n. 2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp*., No. 03C2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n. 1 (N.D. Ind. 2004)). "The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it. Where a party offers a legal conclusion or statement of fact without proper evidentiary support, the Court will not consider that statement." *Id*. (citing *Malec*, 191 F.R.D. at 583.

Defendants have moved to strike fifty-seven of the seventy controverting facts that Plaintiffs proffered in their controverting statement of facts. (Doc. 90 at 2-4). The Court

1   will not grant the motion to strike but will consider or disregard the evidence consistent with
2   the authority discussed above.

3   **B.    The Undisputed Material Facts**

4   The undisputed facts show that SES is a not-for-profit organization that operates
5   special education schools in Illinois and Arizona that help meet the educational, social and
6   emotional needs of young people who have severe behavioral and emotional handicaps.
7   (Doc. 74 at 3).   In Arizona, SES operates the SWEC, a special education school for
8   kindergarten through 12th grade students in and around Phoenix who are challenged by
9   social-emotional, learning, and behavior difficulties.  (*Id*.).  Defendant The Menta Group,
10  Inc, NFP ("The Menta Group") is a not-for-profit organization that is the marketing vehicle
11  for the schools affiliated with SES.  (*Id*.).  Plaintiffs admit that The Menta Group has never
12  employed Breeser.  (Doc. 81 at 11).

13  Around 1990, SES hired Breeser to work at one if its schools in Illinois.  (Doc. 74 at
14  4).  In 2004, Breeser moved from Illinois to Arizona to become the Principal/Administrator
15  of SWEC.  (*Id*.).  Breeser held this position until August 2008, when she became the Life
16  Skills Director at SWEC.  (Doc. 85 at 64-65 ¶¶ 41-44).  Breeser was placed on sabbatical by
17  SES sometime between the end of November and beginning of December 2008.  (Doc. 85 at
18  67 ¶ 48).  On March 1, 2009, Hubble called Breeser and terminated her employment.  (Doc.
19  75 at 9 ¶ 53); *see also infra* Section II.A.1.

20  On March 15, 2010, Plaintiffs filed a complaint against Defendants in the Maricopa
21  County Superior Court.  (Doc. 1-1).  On July, 27, 2010, Plaintiffs' case was removed to this
22  Court.  (Doc. 1).  On October 29, 2010, Plaintiffs filed a first Amended Complaint, asserting
23  seven counts against Defendants.  (Doc. 20).  On April 18, 2011, this Court dismissed all of
24  the claims against Defendants except Count One for Wrongful Termination and the
25  Defamation Claim found in Count Five.  (Doc. 38 at 15).   The Court also dismissed all of
26  the individual Defendants, leaving only The Menta Group, SES, John and Jane Does I-X,
27  and Black and White Corporations I-X as Defendants.  (*Id*.).  On June 11, 2012, Defendants
28  filed the pending Motion for Summary Judgment.  (Doc. 74).

## II.    ANALYSIS

Defendants have moved for summary judgment on Plaintiffs' two remaining claims against Defendants—wrongful termination and defamation. (*Id*. at 2). Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(1)(A)&(B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id*. at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id*. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Id*. at 248. A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*.

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  *Id*. at 249-250.  If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment.  *Id*.

### A.      Plaintiffs' Wrongful Termination Claim

In the Motion, Defendants argue that Plaintiffs' wrongful termination claim should be summarily dismissed for two reasons.  (Doc. 74 at 2).  First, Defendants contend that the wrongful termination claim is barred by the statute of limitations.  (*Id*. at 8).  Second, Defendants argue that even if the wrongful termination claim is not barred, Breeser cannot establish a prima facie case of wrongful termination.  (*Id*. at 9).

### 1.      Statute of Limitations

In the Amended Complaint, Breeser alleges that Defendants violated Arizona's Employment Protection Act ("AEPA") (Arizona Revised Statute ("A.R.S.") § 23-1501) by terminating her employment so she would not "gain further information forming a factual basis to 'blow the whistle' on Defendants and their illegal practices."  (Doc. 20 at 4 ¶ 16). The statute of limitations to bring a wrongful termination claim under the AEPA is one year and is found in A.R.S. § 12-541(4).  The statute of limitations states, "[t]here shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward," actions "[f]or damages of wrongful termination."  A.R.S. § 12-541.  "Although 'accrual' is not defined in this section, [Arizona] courts have applied the common law 'discovery rule' to interpret that term within statutes of limitations."  *Stulce v. Salt River Project Agr. Imp. & Power Dist*., 3 P.3d 1007, 1010 ¶ 10 (Ariz. Ct. App. 1999) (citing *Anson v. American Motors Corp*., 747 P.2d 581, 584 (Ariz. Ct. App. 1987) (accrual under two-year wrongful death statute of limitations)).

> That common law rule, if sufficient evidence supporting its application is presented, may delay commencement of the time period within which suit must be filed.  Under the discovery rule, a cause of action accrues "when the plaintiff knew or by

1  
2  
3  
4  
5  
6  

> the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Mayer v. Good Samaritan Hosp.*, 482 P.2d 497, 501 (Ariz. 1971); *See also Vega v. Morris*, 910 P.2d 6, 8 (Ariz. 1996). The burden of establishing that the discovery rule applies to delay the statute of limitations rest[s] on plaintiff. *Ulibarri v. Gerstenberger*, 871 P.2d 698, 702 (Ariz. Ct. App.1993); *Cooney v. Phoenix Newspapers*, Inc., 770 P.2d 1185, 1187 (Ariz. Ct. App.1989).

7  *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996). "The relevant inquiry is

8  when did a plaintiff's 'knowledge, understanding, and acceptance in the aggregate provide [ ]

9  sufficient facts to constitute a cause of action.'" *Little v. State*, 240 P.3d 861, 864 ¶ 9 (Ariz.

10  Ct. App. 2010) (quoting *Walk v. Ring*, 44 P.3d 990, 996 ¶ 23 (Ariz. 2002)). "Once the

11  defendant has established a prima facie case entitling him to summary judgment on a statute

12  of limitations defense, the plaintiff has the burden of showing available, competent evidence

13  that would justify a trial." *Logerquist*, 932 P.2d at 284 (quoting *Ulibarri*, 871 P.2d at 703).

14  In this case, the Court finds Plaintiffs have proffered no such evidence. Plaintiffs

15  filed their initial claims on March 15, 2010. (Doc. 1-1). In Defendants' separate statement

16  of facts, Defendants state Breeser was terminated on March 1, 2009, over a year before

17  Plaintiffs filed suit. (Doc. 75 at 9 ¶¶ 53-54). Defendants cite Hubble's deposition (Doc. 75-2

18  at 50-86) and his declaration (Doc. 75-3 at 20-24) as support for this material fact. (*Id.*). In

19  their controverting statement of facts, Plaintiffs deny this is the date of termination and

20  attempt to create a disputed factual issue. *See* (Doc. 85 at 77-78). Plaintiffs cite Breeser's

21  declaration and the declaration of her attorney, Richard Treon, as support for their argument.

22  However, Plaintiffs neither proffer a different date of termination nor cite any evidence in the

23  record that shows when Breeser was actually terminated. Essentially, Plaintiffs want the

24  Court to find this is a disputed fact based on competing statements in the parties'

25  declarations, the proverbial "he said vs. she said" argument.

26  However, Hubble's declaration, the support for Defendants' statement of fact, is

27  more than merely testimonial evidence. Unlike the declarations Plaintiffs cite to supporting

28

their argument, Hubble's declaration supports the "March 1, 2009" date with evidence beyond the declaration itself.  Hubble's declaration states, "[t]he documents submitted by both Breeser to the Arizona Department of Economic Security and by SES to Paychex confirm that March 1, 2009 was Breeser's date of termination.  These documents are attached as Exhibit 11."  (Doc. 75-3 at 24¶ 29).  Turning to Exhibit 11, there is no dispute that it is the form submitted by Breeser to the Arizona Department of Economic Security and dated July 7, 2009.  (*Id*. at 56).  The form Breeser submitted to the State of Arizona tells the applicant to "Explain why you feel you were discharged (provide dates)," under this it says in handwriting "Not sure, No specific reason."  Further down the form it says in handwriting, "I was injured on Nov 29th [sic] 2008.  Put on Medical leave until March 1 [sic] 200[9].  Called on the phone by [unreadable] Hubble 3/1/0[9] and told I was discharged."[2]  (*Id*.).

Plaintiffs' statement of facts fails to create a disputed issue of material fact as to the date Breeser was terminated.  In the controverting statement of facts, Plaintiffs argue Breeser was never "told" on March 1, 2009 that she was terminated.  (Doc. 85 at 78 ¶ 54). This argument is directly refuted by Breeser's own words written on the form to the Arizona Department of Economic Security—"Called on the phone by [unreadable] Hubble 3/1/0[9] and told I was discharged."  (Doc. 75-3 at 56).

In addition, Plaintiffs attempt to put this date in dispute by arguing in their statement of facts that Breeser only put March 1, 2009, because "she sought to have her unemployment benefits started by the State on March 1 because that was the date that Defendant told the State that she was terminated."  (Doc. 85 at 78 ¶ 54).  The Court notes that Breeser is asking the Court to contradict the date the State of Arizona has her on file as starting her unemployment benefits.  If the Court were to agree with Plaintiffs, Breeser would have misled either this Court or the State of Arizona as to her date of termination creating

---

[2] The handwriting on the form says the dates "March 1 2008" and "3/1/08".  (Doc. 75-3 at 56).  However, the Court finds these dates written on the form are unquestionably mistakes and intended to read "March 1, 2009" and "3/1/09", because Breeser stated that she was injured on November 29, 2008 and put on medical leave until March 1, 2008.  This statement makes no temporal sense unless Breeser meant March 1, 2009.  Further, the date March 1, 2008, has never been a date at issue in this case and Plaintiffs repeatedly refer to March 1, 2009, as the date at issue (Doc. 85 at 78 ¶ 54).

1   inconsistent findings.  *See generally Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778,

2   782-83 (9th Cir. 2001) (discussing factors courts may consider in determining whether to

3   apply the doctrine of judicial estoppel.  Courts may apply the doctrine when a party's later

4   inconsistent position creates inconsistent court determinations, thus, threatening judicial

5   integrity).  The Court will not find a disputed issue of fact based merely on Breeser

6   contradicting her own prior statements.

7          Finally, in their controverting statement of facts, Plaintiffs fail to cite where Breeser

8   claims she used the March 1, 2009 date solely to obtain unemployment benefits as of that

9   date.  Plaintiffs merely state that Breeser testified in her declaration to putting this date on

10  her application in order to receive unemployment benefits.  (Doc. 85 at 78 ¶ 54).  The only

11  citation to the record to support Breeser's statement is to Richard Treon's declaration.  *See*

12  (*id.*) (citing "See Declaration of undersigned counsel, PSOFE, ¶1, Ex. E, ¶18," this citation is

13  found at Doc. 86-3 at 8 ¶ 18).  Richard Treon's declaration does not discuss this statement by

14  Breeser.  Assuming, arguendo, that Breeser's statement created an issue of material fact,

15  evidently Plaintiffs expect the Court to cull through Breeser's seventy page declaration (Doc.

16  86-1 at 1-70) to determine whether she in fact made the statement.

17         The non-movant "must do more than simply show that there is some metaphysical

18  doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is

19  a genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87.  Plaintiffs did invoke the

20  discovery rule in the Response.  *See* (Doc. 81 at 8).  Plaintiffs, however, make the conclusory

21  statement that the discovery rule governs the statute of limitations, therefore, a genuine issue

22  of material fact exists.  (*Id.*).  Plaintiffs' conclusory statement is not enough.  Plaintiffs have

23  not proffered sufficient evidence to establish that the discovery rule applies to determining

24  when Breeser was terminated.  *See Logerquist*, 932 P.2d at 284.  Plaintiffs have proffered no

25  competent evidence that would justify a trial.  *See id.*

26         The Court finds there is no genuine dispute as to the material fact that Breeser was

27  terminated on March 1, 2009.  Therefore, Plaintiffs' wrongful termination claim is barred by

28  the one year statute of limitations under Arizona law because Plaintiffs filed suit on March

1   15, 2010.  Consequently, Defendants are entitled to judgment as a matter of law on the

2   wrongful termination claim in Count One of the Amended Complaint.

3                    **2.      Prima Facie Case of Wrongful Termination**

4           The Court need not address whether Plaintiffs have established a prima facie case for

5   wrongful termination because Plaintiffs' wrongful termination claim is barred by the statute

6   of limitations as discussed above, *see supra* Section II.A.1, and the claim is summarily

7   dismissed.

8           **B.      Plaintiffs' Defamation Claim**

9           In the Motion for Summary Judgment, Defendants contend that Plaintiffs'

10  defamation claim should also be summarily dismissed.  (Doc. 74 at 2-3).  In the Amended

11  Complaint, Plaintiffs allege that Defendants defamed Breeser by "stat[ing] to third parties

12  matters that were false, which they knew to be false, and which directly injured the

13  reputation of [ ] [ ] Breeser."  (Doc. 20 at 20 ¶ 30).   The Court finds six statements at issue

14  under Plaintiffs' defamation claim:

15          Statement 1, is the statement Hubble allegedly made regarding Breeser to Tammy

16  Patrick ("Patrick"), a parent of a student, in February 2009.   In response to Patrick's

17  question, "did she quit?" Hubble responded "yes."  (Doc. 74 at 13).

18          Statement 2, is the statement Patrick allegedly overheard Hubble make to Ken

19  Carwell ("Carwell"), President of the Board of Directors, in April 2009.  Patrick alleges that

20  she heard Hubble say to Carwell while laughing, "I don't think [Breeser] realizes that she is

21  such a bitch."  (*Id*. at 14).

22          Statement 3, is the statement Carwell allegedly made to Patrick in April 2009 that

23  Breeser "quit."  (*Id*.).

24          Statement 4, is the statement that Elizabeth Conran ("Conran"), Secretary of the

25  Board of Directors and member of the management team for SES, allegedly made to Don

26  Houston ("Houston"), former principal and Breeser's supervisor, that "[Breeser] never could

27  handle the job anyway."  (*Id*.).

28          Statement 5, is a statement made by unidentified agents of Defendants, on an

1  unidentified date, to Miriam Curchitser ("Curchitser"), an elementary teacher at SWEC, that

2  Breeser "quit and abandoned" her job.  (Doc. 81 at 16) (citing PSOFE, ¶3, Ex. C.).

3      Statement 6, is an unidentified statement or statements made by unidentified

4  Defendants to unidentified prospective employers on an unidentified date regarding the

5  circumstances of Breeser's employment and termination.  (Doc. 20 at 20 ¶ 30).

6      For the following reasons, the Court finds none of these statements factually support

7  Plaintiffs' defamation claim and Defendants are entitled to judgment as a matter of law.  "A

8  defamation action compensates damage to reputation or good name caused by the publication

9  of false information.  To be defamatory, a publication must be false and must bring the

10 defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty,

11 integrity, virtue, or reputation."  *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787

12 (Ariz. 1989) (citations omitted).  The tort of defamation includes libel and slander.  50 Am.

13 Jur. 2d *Libel and Slander* § 1 (2013).  Libel is the publication of defamatory statements by

14 written or printed words.  Restatement (Second) of Torts § 568 (1977).  Slander is the

15 publication of defamatory statements by spoken words.  *Id*.

### 1.    Statements 1 and 4 are Barred by the Statute of Limitations

17     Under Arizona law, the statute of limitations for a defamation claim is one year and

18 is found in A.R.S. § 12–541(1).  This statute provides, in part:

19         There shall be commenced and prosecuted within one year after the
20         cause of action accrues, and not afterward, the following actions:

21         1. For . . . injuries done to the character or reputation of another by
           liable or slander.

22 A.R.S. § 12–541(1).  As a general rule, Arizona's defamation rule provides that a defamation

23 action accrues—and the statute of limitations begins to run—upon publication of the

24 defamatory statement.  *Boatman v. Samaritan Health Servs., Inc*., 812 P.2d 1025, 1031 (Ariz.

25 Ct. App. 1990) (citing *Lim v. Superior Court in and for Pima Cnty.*, 616 P.2d 941, 942 (Ariz.

26 Ct. App. 1980).

27     Defendants argue that alleged Statements 1 and 4 are barred by the statute of

28

limitations because there is no dispute that Statement 1 was made in February 2009[3], Statement 4 was made prior to March 1, 2009[4], and Plaintiffs filed suit over one year later on March 15, 2010.  (Doc. 74 at 14).  Plaintiffs argue that the discovery rule applies because Breeser did not learn of the statements until after March 15, 2009.  (Doc. 81 at 13).

"[T]he 'discovery rule' [ ] holds that when defamatory statements are published in a manner in which they were peculiarly likely to be concealed from the plaintiff, the cause of action accrues when the plaintiff discovers the statements or reasonably should have discovered them."  *Carey v. Maricopa Cnty.*, CV-05-2500-PHX-ROS, 2009 WL 750220, at *6 (D. Ariz. Mar. 10, 2009) (citing *Clark v. Airesearch Mfg. Co. of Ariz., Inc., a Div. of Garrett Corp*., 673 P.2d 984, 986 (Ariz. Ct. App. 1983)).  "However, Arizona cases have applied the discovery rule exceedingly sparingly" in defamation claims.  *Id.* (noting that "the discovery rule has been found to apply in only one case, a case decided under A.R.S. § 12-821.01 rather than A.R.S. § 12.541.").  In *Clark*, the court cited cases from Illinois, Texas, Washington, and California, in finding that the discovery rule did not extend to cases where remarks were not made in an "inherently secret or confidential matter."  673 P.2d at 987; *see also Carey*, 2009 WL 750220 at *6 (emphasizing that defamatory remarks must be published in an inherently secret or confidential matter).  "Clandestine" remarks are not enough.  *Carey*, 2009 WL 750220 at *7.  "Remarks made among co-workers and their associates are simply not the sort of defamation that comes under the scope of the discovery rule.  That rule is limited to things which are, by actual rule of confidentiality or privacy, inaccessible to the wronged party."  *Id.*

In this case, neither Statement 1 nor 4 were inaccessible to Breeser *because* of the rule of confidentiality or privacy.  Statement 1 is the answer Breeser's former co-worker gave the parent of a student when asked a question—Hubble allegedly said "yes" in answer

---

[3]  As Plaintiffs admit in their controverting statement of facts, "[i]n February of 2009 [Patrick] specifically asked where was Mrs. Breeser, and [Patrick] was told she was no longer with [SES].  [Patrick] said, 'What happened? Did she quit?' And [Hubble] goes, 'Yes, she did.'"  (Doc. 85 at 84 ¶ 61).
[4]  As Plaintiffs admit in their controverting statement of facts, "[t]his conversation occurred prior to Mr. Houston's termination on March 1, 2009."  (Doc. 85 at 91 ¶ 66).

1    to Patrick's question whether Breeser quit.   Statement 4 is the comment made among

2    Breeser's former co-workers, which Conran made to Houston, stating Breeser "never could

3    handle the job anyway."   These remarks may have been clandestine, but they were not made

4    in an *inherently* confidential matter.   Accordingly, the Court finds the discovery rule does not

5    apply to toll the statute of limitations for these allegedly defamatory remarks.   Therefore,

6    Plaintiffs are barred from seeking damages for these remarks because Plaintiffs failed to

7    make their claim within one year of the remarks being made.

8                    **2.      Statement 2 is not Defamatory**

9            Statement 2 is the comment Patrick allegedly overheard Hubble make to Carwell,

10   that Breeser was a "bitch."   Statements that are opinion or hyperbole cannot support a claim

11   for slander.   *Burns v. Davis*, 993 P.2d 1119, 1129 (Ariz. Ct. App. 1999); *Donahoe v. Arpaio*,

12   869 F. Supp. 2d 1020, 1062 (D. Ariz. 2012) ("Statements of rhetorical hyperbole are not

13   actionable as '[t]he law provides no redress for harsh name-calling.'") (quoting *Flowers v.*

14   *Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002)).   Only statements which may be reasonably

15   interpreted as factual assertions, not simply statements of opinion, are actionable as

16   defamation.   *Donahoe*, 869 F. Supp. 2d at 1062 (citing *Rodriguez v. Panayiotou*, 314 F.3d

17   979, 986 (9th Cir. 2002)).   "To determine whether a statement can be reasonably interpreted

18   as a factual assertion, a court 'must examine the totality of the circumstances in which it was

19   made.'"   *Id.* (quoting *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)).

20   "The issue of whether an allegedly defamatory statement constitutes fact or opinion is a

21   question of law for the court to decide."   *Id.* (quoting *Rodriguez*, 314 F.3d at 985).   "Where

22   the allegedly defamatory statement could 'reasonably be construed as either fact or opinion,

23   the issue should be resolved by a jury.'"   *Id.* (quoting Rodriguez, 314 F.3d at 985–86).

24           In this case, this alleged statement is clearly an opinion expressed by Hubble.   The

25   statement was allegedly made after Breeser was fired in April 2009.   There is nothing more

26   to the statement than the harsh moniker that Hubble used to describe Breeser that could lead

27   the Court to find this statement was a factual assertion.   Plaintiffs extrapolate from Hubble's

28   statement that it is more than merely an opinion.   Plaintiffs argue that the context in which

Hubble made the statement makes it defamatory because it "could have caused Ms. Patrick to believe that Plaintiff must have been incompetent in her job and a liar to boot because why else would her employer think such of her?" (Doc. 81 at 18). The Court finds the same argument could be made in defamation claims about almost any expressed opinion. An opinion is almost always based on the perception of the speaker. The law, however, has made no allowance for merely stating an opinion as the sole basis of a defamation claim. "[O]bscenities, vulgarities, insults, epithets, name-calling, and other forms of verbal abuse are insufficient to raise a claim for defamation." *Foroughi v. Wal-Mart Stores, Inc*., CV-10-506-PHX-GMS, 2010 WL 2231931, at *2 (D. Ariz. June 2, 2010) (citing *Flowers*, 310 F.3d at 1127).

In *Foroughi*, the plaintiff alleged a co-worker called her "bitch," "idiot," and "slacker." *Id*. This Court found such name-calling, while offensive, does not give rise to a cause of action for defamation under Arizona law. *Id*. In this case, Plaintiffs have cited no case that supports their argument for an exception to this rule. Accordingly, the Court finds this statement by Hubble was not defamatory.

### 3. Statement 3 does not Qualify as Slander per se

Statement 3 is the statement that Carwell made to Patrick in April 2009, when he told her Breeser had "quit." Plaintiffs argue that this statement is slander per se. (Doc. 81 at 16). "As a general rule, slander Per quod is not actionable unless special damages are pleaded and proved." *Modla v. Parker*, 495 P.2d 494, 496 (Ariz. Ct. App. 1972) (citing *Berg v. Hohenstein*, 479 P.2d 730, 732 (Ariz. Ct. App. 1971)). "However, slander Per se is actionable without a need to plead or prove special damages if the utterance falls within one or more specified categories . . . ." *Id*. "An utterance is slander Per se when its publication charges a contagious or venereal disease, or charges that a woman is not chaste, or tends to injure a person in his profession, trade or business, or imputes the commission of a crime involving moral turpitude." *Id*. at 496 n. 1 (citations omitted). Damages in these cases are assumed. *Id*. at 496.

Oral slander which concerns one in her profession, trade or business is the category

which Breeser relies upon in support of her contention that Carwell's statement was slander per se and therefore a genuine issue of material fact exists for the jury; that is, whether the statement made by Carwell in fact injured Breeser in her profession.  (Doc. 81 at 16).

> In order to fit within the business category, the slanderous utterance must prejudice the person in the profession, trade or business in which he is actually engaged.  This means that the statement must be of or concerning one in his business capacity. Words which are merely injurious to one regardless of his occupation do not qualify as slander Per se.

*Modla*, 495 P.2d at 496-96 (citations omitted).   As the Restatement (Second) of Torts explains[5],

> Disparaging words, to be actionable per se under the rule [for slanderous imputations affecting conduct of business, trade, or profession], must affect the plaintiff in some way which is peculiarly harmful to one engaged in his trade or profession. Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is *peculiarly valuable* in the plaintiff's business or profession. . . . . Thus, a statement that a physician consorts with harlots is not actionable per se although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does so affect it.

Restatement (Second) of Torts § 573 cmt e (1977) (emphasis added).  Accordingly, the Court must determine if Carwell's statement, that Breeser "quit," disparages a quality that is "peculiarly valuable" to Breeser's profession of being a school administrator.

Plaintiffs argue that *Hirsch v. Cooper*, 737 P.2d 1092 (Ariz. Ct. App. 1987), is controlling.  (Doc. 81 at 15-16).  In *Hirsch*, the defendant doctor told a representative of a

---

[5]      "In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law on a particular subject if its position, as applied to the claim at issue, 'is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere.'"  *Freeman v. Sorchych*, 245 P.3d 927, 932 (Ariz. Ct. App. 2011), review denied (Aug. 31, 2011) (quoting *Ramirez v. Health Partners of S. Ariz.*, 972 P.2d 658, 665 (Ariz. Ct. App. 1998)).   "Further, Arizona courts routinely look to guidance from courts of other states on matters of first impression.  *Id.* (citing *Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 527 (Ariz. Ct. App. 2006)).

foundation selecting physicians to treat foundation beneficiaries regarding plaintiff, "Neil Hirsch, I wouldn't send my dog or cat to him."  737 P.2d at 1094, *disapproved on other grounds by Godbehere*, 783 P.2d 781.  The plaintiff brought a defamation claim against the doctor under the argument that this statement was slander per se because the statement regarded his profession and referrals from the foundation dropped in a dramatic fashion after the comment was made.  *Id.* at 1095.  The court agreed, and found the doctor's remark was peculiar to being a doctor and was "a statement which tend[ed] to injure a person in his profession," and therefore it was slander per se.  *Id.*   By contrast, in *Modla v. Parker*, the court concluded that the statement, "do me a favor and see a psychiatrist," purportedly made to a patient by a hospital administrator, "clearly d[id] not pertain to [the patient] in any business capacity" and thus did not constitute slander per se.  495 P.2d at 495, 497.

Plaintiffs contend that Breeser's "entire career was tied to providing care to special needs children" and Carwell's comment that she "quit" "could be found by the trier of fact to be damaging to [Breeser] in her profession."  (Doc. 81 at 16).  Defendants cite various jurisdictions which have explicitly held that falsely telling a third party that a claimant "quit" or "resigned" is not slander per se.  (Doc. 90 at 10) (citing *Ferguson v. Hilton Hotels Corp.*, CIV.A. H-09-4114, 2011 WL 1485680, at *7 (S.D. Tex. Apr. 19, 2011); *Springer v. Physician Sales & Serv.*, 16940, 1998 WL 543743, at *2 (Ohio Ct. App. Aug. 28, 1998)).  Further, Defendants argue *Hirsch* is not controlling because Carwell's comment was not directly related to Breeser's professional ability.  (*Id.* at 11).

The Court finds the generic statement, that Breeser "quit," is not peculiarly valuable to Breeser's profession, any more so than the statement would be to any other profession.  In *Hirsch*, the statement "I wouldn't send my cat or dog to him," directly related to the plaintiff's ability to care for patients.  This statement was slander per se because the plaintiff was a doctor and disparaging remarks about sending patients to a physician is peculiarly valuable to the profession.  *See Hirsch*, 737 P.2d at 1095.  Unlike this statement in *Hirsch*, merely making the statement that Breeser "quit," even if made falsely, did not have the required unique relation to Breeser's ability to perform her job as a school administrator.

Further, other courts have found that factually similar situations do not support claims of slander per se. Therefore, the Court finds Statement 3 does not qualify as slander per se under Arizona law and does not support Plaintiffs' defamation claim.

### 4.      Statement 5 is not Supported by the Record

Statement 5 is a statement Curchitser made in her declaration. (Doc. 86-2 at 12-14). Plaintiffs state in their Response that Curchitser said in her declaration that she was told by unidentified agents of Defendants that "[Breeser] had quit and abandoned her job." (Doc. 81 at 16). Curchitser's declaration (Doc. 86-2 at 12-14) is found in the PSOFE (Doc. 86).

Statement 5 is not supported by citation to the record and will not be considered. First, Plaintiffs do not claim that this statement made by Curchitser is the basis for any part of their defamation claim. Plaintiffs merely argue that Curchitser's statement corroborates Statement 1. (Doc. 81 at 16).

Second, Plaintiffs citation to Curchitser's declaration and the PSOFE fails to comply with LRCiv 56.1(b). As the Court explained above, *see supra* Section I.A.1, the PSOFE fails to lay out additional facts in separately numbered paragraphs in accordance with LRCiv 56.1(b). LRCiv 56.1(b) further requires that additional facts be supported by admissible portions of the record. While the effect on the Court, of Plaintiffs' failure to put this additional fact in a separately numbered paragraph, could be somewhat mitigated if Plaintiffs had properly cited to the record in the Response, Plaintiffs cite the wrong part of the record for Curchitser's statement in the Response. In the Response, Plaintiffs cite "PSOFE, ¶3, Ex. C." as the support for Curchitser's statement. (Doc. 81 at 16). However, Exhibit C, the third exhibit attached to the PSOFE, is not even Curchitser's declaration. Exhibit C of the PSOFE is the declaration of Sabastian Davis. (Doc. 86-2 at 7-10). Curchitser's declaration is Exhibit D to the PSOFE. (Doc. 86-2 at 12-14). Further, neither "¶3" of Exhibit C nor Exhibit D is a statement made by Curchitser regarding Breeser's termination.

Even if Plaintiffs had properly cited to the record, all the information Plaintiffs have given in the Response is that statements were made by "agents of Defendants" to Curchitser that Breeser had quit and abandoned her job. (Doc. 81 at 16). Plaintiffs establish neither

1   who made the statement nor when the statement was made.  The facts Plaintiffs have given

2   in the Response are not enough to establish a genuine issue for trial and Plaintiffs fail to

3   direct the Court to additional facts to bolster their claim.

4       The Court is left to fend for itself and pick through the record to establish Plaintiffs'

5   claim with no citation to an admissible portion of the record where Curchitser made this

6   statement.[6]  Accordingly, the Court will not consider Curchitser's statement for purposes of

7   Plaintiffs' defamation claim.

8               **5.     Statement 6 is not Supported by the Record**

9       Statement 6 is the unidentified statement or statements made to prospective

10  employers about Breeser's termination.  Plaintiffs only reference this vague claim once in

11  their pleadings, which is in the Amended Complaint.  (Doc. 20 at 20 ¶ 30).  Plaintiffs do not

12  address this statement in their Response (Doc. 81) or establish any facts supporting this claim

13  in their controverting statement of facts (Doc. 85).   Accordingly, Plaintiffs have not

14  established that there is any issue of fact, or any facts that exist, with regard to this claim.

15  Therefore, the Court finds this statement is unsupported by facts and does not justify

16  Plaintiffs' defamation claim.

17      In summary, in considering Plaintiffs' defamation claim based on these six

18  Statements, the Court finds Plaintiffs have not "come forward with [admissible and] 'specific

---

19  [6]     The Court notes Plaintiffs likely intended to cite ¶ 8 of Curchitser's declaration.

20  (Doc. 86-2 at 13-14 ¶ 8).  This statement by Curchitser merely says Hubble and Carwell told
    Curchitser on two different occasions in December 2008 that Breeser had "resigned."  (*Id*. at

21  13 ¶ 8).   Even if Plaintiffs properly cited the record and the Court were to consider
    Curchitser's declaration, the Court would dismiss the defamation claim for the following
    reasons.

22      First, as discussed above, *see supra* Section II.B.1, these statements by Hubble and

23  Carwell are barred from consideration by the statute of limitations because they were made
    in December 2008, over one year prior to Plaintiffs filing suit.

24      Second, even if these statements were not barred by the statute of limitations, merely
    saying Breeser "quit" or "resigned" does not rise to the level of slander per se and does not
    support a claim for defamation, as discussed above, *see supra* Section II.B.3.

25      Finally, unlike Plaintiffs' Response asserts, Hubble and Carwell did not tell

26  Curchitser that Breeser had "abandoned her job."  (Doc. 81 at 16).  While the difference
    could be argued to merely be an issue of semantics, this point underscores the purpose of

27  LRCiv 56.1(b).  If Plaintiffs want the Court to rely on the arguments made in their briefs,
    Plaintiffs are advised to ensure additional facts are actually supported by the record and the

28  record is properly cited.  This is especially true in a claim for defamation where the claim
    relies on what Defendants actually said about Breeser.

1   facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.

2   Defendants have shown that there is no genuine dispute as to any material fact and the facts

3   do not support Plaintiffs' defamation claim.  Therefore, Defendants are entitled to judgment

4   as a matter of law on the defamation claim in Count Five of the Amended Complaint.  *See*

5   Fed. R. Civ. P. 56(a).

6           **C.     Plaintiffs' Counsel's Actions**

7           Counsel's egregious abuse of the clear mandate in LRCiv 56.1(b) is a glaring

8   example of the kind of conduct that needlessly drives up the cost and time of litigation.

9   Specifically, Counsel has proffered a ninety-two page controverting statement of facts (Doc.

10  85) that attempts to subvert the seventeen page limit of responsive pleadings dictated by

11  LRCiv 7.2(e)(1).  Plaintiffs' controverting statement of facts continually makes arguments

12  properly asserted in their response and adds additional facts without a single heading or

13  separate numbered paragraph.  Further, Counsel has proffered a separate statement of facts

14  setting out additional facts (the PSOFE, Doc. 86) that is nothing more than a list of five

15  attachments also devoid of a single separate paragraph listing these additional facts.

16          Between the ninety-two pages of argument in the controverting statement of facts and

17  the one-hundred and fifty-three pages of attachments that constitute Plaintiffs' additional

18  facts, it appears to the Court as though Counsel endeavored to obfuscate the relevant material

19  facts in this case in an attempt to bolster Plaintiffs' claim that there is a disputed fact,

20  somewhere, precluding summary judgment.  Counsel then leaves it to the Court to find what

21  that fact is and where that fact is located.  Counsel is reminded, as explained above, *see*

22  *supra* Section I.A.2, "[j]udges are not like pigs, hunting for truffles buried in briefs."  *Indep.*

23  *Towers of Wash.*, 350 F.3d at 929 (citing *Dunkel*, 927 F.2d at 956).

24  //

25  //

26  //

27  //

28  //

1    **III.    CONCLUSION**

2         Based on the foregoing,

3         **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 74) is

4    granted.    The two remaining claims from Plaintiffs' Amended Complaint (Doc. 20),

5    Plaintiffs' wrongful termination and defamation claims, are summarily dismissed.

6         **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in

7    favor of Defendants and against Plaintiffs, with Plaintiffs to take nothing.

8         **IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

9         Dated this 21st day of March, 2013.

10

11

12    _____

13                James A. Teilborg
                Senior United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28