**WO**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Breeser; et al., | Case No. CV 10-1592-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| The Menta Group, Inc., NFP; et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion (the "Motion") under Federal Rule of Civil Procedure 59, to alter or amend the judgment. (Doc. 94). Defendant[1] has filed a Response to Plaintiffs' Motion (Doc. 95) and Plaintiffs have filed a Reply to Defendant's Response. (Doc. 96). The Court has considered the parties' pleadings and now rules on the Motion.

**I.   BACKGROUND**

This suit arises out of the termination of Plaintiff Laura Breeser's ("Breeser") employment by Defendant Special Education Services ("SES"). Breeser worked for SES for

---

[1] The Defendant in this case is essentially only Special Education Services ("SES"). Defendant The Menta Group, Inc, NFP ("The Menta Group") is a not-for-profit organization that is the marketing vehicle for the schools affiliated with SES and Plaintiffs admit that The Menta Group has never employed Breeser. (Doc. 74 at 3); (Doc. 81 at 11). The Court also dismissed all of the individual Defendants in this case, leaving only The Menta Group, SES, John and Jane Does I-X, and Black and White Corporations I-X as the remaining Defendants when summary judgment was granted. (Doc. 38 at 15).

approximately twenty-nine years before SES terminated her employment. The position Breeser was terminated from was Principal of the Southwest Education Center ("SWEC") in Phoenix, Arizona.

The undisputed facts show that SES is a not-for-profit organization that operates special education schools in Illinois and Arizona that help meet the educational, social, and emotional needs of young people who have severe behavioral and emotional handicaps. (Doc. 74 at 3). In Arizona, SES operates the SWEC, a special education school for kindergarten through 12th grade students in and around Phoenix who are challenged by social-economical, learning, and behavior difficulties. (*Id.*).

Around 1990 SES hired Breeser to work at one of its schools in Illinois. (Doc. 74 at 4). In 2004, Breeser moved from Illinois to Arizona to become the Principal/Administrator of the SWEC. (*Id.*). Breeser held this position until August 2008, when she became the Life Skills Director at SWEC. (Doc. 85 at 64-65 ¶¶ 41-44). Breeser was placed on sabbatical by SES sometime between the end of November and beginning of December 2008. (Doc. 85 at 67 ¶ 48). On March 1, 2009, Breeser's supervisor, William Andy Hubble ("Hubble"), called Breeser and terminated her employment. (Doc. 75 at 9 ¶ 53).

On March 15, 2010, Plaintiffs filed a complaint against Defendant in the Maricopa County Superior Court. (Doc. 1-1). On July 27, 2012, Plaintiffs' case was removed to this Court. (Doc. 1). On October 29, 2010, Plaintiffs filed a first Amended Complaint, asserting seven counts against Defendant. (Doc. 20). On April 18, 2011, this Court dismissed all of the claims against Defendant except Count One for Wrongful Termination and the Defamation Claim found in Count Five. (Doc. 38 at 15).

On June 11, 2012, Defendant filed a motion for summary judgment. (Doc. 74). On March 21, 2013, this Court entered summary judgment in favor of Defendant on Plaintiffs' remaining claims of wrongful termination and defamation (the "Order"). (Doc. 91). This Court found Plaintiffs' wrongful termination claim was barred by the one-year statute of limitations because Breeser was terminated on March 1, 2009 and filed suit on March 15, 2010. Judgment was entered and the case was closed. (Doc. 91 at 23).

In deciding on the motion for summary judgment and in reviewing Plaintiffs' responsive pleadings, the Court noted that Plaintiffs' controverting statement of facts (Doc. 85) and statement of additional facts (Doc. 86) were grossly out of compliance with the Local Rules of Civil Procedure ("LRCiv"). (*Id*. at 2-7). The Court found Plaintiffs' statements of fact added substantive argument to Plaintiffs' claims instead of only material facts as required by LRCiv 56.1(b) were a blatant attempt to subvert the seventeen page limit for responsive memoranda established by LRCiv 7.2(e)(1). (*Id.* at 4). The Court went on to make it clear that Plaintiffs' counsel's abuse of the rules was a glaring example of the kind of conduct that needlessly drives up the cost and time of litigation. (*Id*. at 22). In arguing for summary judgment Defendant moved to strike fifty-seven of the seventy controverting facts that Plaintiffs put forth. (*Id*. at 6). The Court explicitly did not grant Defendant's motion and explained that it would consider or disregard the evidence consistent with the legal authority discussed in the Order. (*Id*. at 7). Ultimately, the Court held that Plaintiffs failed to bring forward any competent evidence that created a genuine dispute as to the material fact that Breeser was terminated on March 1, 2009. (*Id.* at 12). Because this date was over one year prior to the date Plaintiffs filed their complaint the statute of limitations had run and summary judgment was granted for Defendant on Plaintiffs' wrongful termination claim.

Following the judgment in favor of Defendant, and within the requisite twenty-eight days, Plaintiffs filed the pending Motion for reconsideration under Federal Rule of Civil Procedure 59 to Alter or Amend the Judgment. (Doc. 94). Plaintiffs' Motion does not address the Court's holding on Plaintiffs' defamation claim, but only requests reconsideration of the Court's holding on Plaintiffs' wrongful termination claim. (*Id.*).

## II.  DISCUSSION

Plaintiffs' counsel describes myriad personal and administrative issues that led to his failure to follow the procedural rules and blames Defendant for misleading the Court. (*Id*. at 2-10). Plaintiffs request this Court alter or amend the Order granting summary judgment to Defendant on Breeser's wrongful termination claim. (*Id*. at 2). Sympathetic as the Court may be to counsel's plight, these facts establish neither a factual nor legal nexus for grating a

motion for reconsideration. Counsel "invoke[s] the Court's sense of empathy and understanding of the circumstances that brought about [his] (hopefully) uncharacteristic sloppy practice which . . . may be subject to understanding and forgiveness." (*Id*. at 5). Counsel goes on to explain to the Court that "this is only the second time [he] has filed a responsive pleading to a motion for summary judgment in Federal Court to the best of [his] recollection in 45 years of practice." (*Id*. at 6). While this may or may not be true, a quick search of the Court's electronic filing system shows counsel has appeared before this Court in no less than sixty-four (64) different cases since 1973. For counsel to now plead unfamiliarity with the federal and local rules of civil procedure is simply beyond the pale.

Counsel's admitted lack of understanding and adherence to the federal and local rules of civil procedure appears to not be isolated to responding to motions for summary judgment. While Plaintiffs' pending Motion is filed under Federal Rule of Civil Procedure 59, Plaintiffs fail to cite Rule 59 much less the legal standard that governs Rule 59 even once in arguing their Motion for reconsideration (Doc. 94). Instead, Plaintiffs entire argument for why the Court should grant their Motion is based on Federal Rule of Civil Procedure 56. (Doc. 94 at 10) ("we ask the Court under Rule 56(e) to exercise its authority to give Plaintiff the opportunity to properly support or address the facts."). Federal Rule of Civil Procedure 56 is entitled "Summary Judgment" and is applicable when one of the parties is preparing to move or has moved for summary judgment. That time has passed. A judgment has been ordered in this case. *See* (Doc. 91 at 23). Rule 56 is completely inapplicable to Plaintiffs' argument that the Court should grant their Motion for reconsideration.

Plaintiffs eventually cite a correct legal standard for reconsideration in their Reply and begin to make an argument under Federal Rule of Civil Procedure 59. (Doc. 96 at 2-10). Ironically, in blaming Defendant for misleading the Court, Plaintiffs attempt to argue that "Defendant improperly stated its legal position in the Reply [(Doc. 90)] instead of [its] Motion [for summary judgment (Doc. 74)]" (Doc. 96 at 4), which is exactly what Plaintiffs have done here in their Reply (Doc. 96) instead of their Motion for reconsideration (Doc. 94). In spite of this shortcoming, the Court will still apply the standard of Rule 59 to

Plaintiffs' arguments contained in their Motion for reconsideration.

### A. Legal Standard

Under Federal Rule of Civil Procedure 59, reconsideration is only appropriate if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Plaintiffs do not argue that there is newly discovered or previously unavailable evidence, nor do they argue that there has been a change in law. Plaintiffs' sole argument for reconsideration rests on the second factor: that the Court committed clear error and the initial decision was manifestly unjust. (Doc. 96 at 2-10).

The same standards govern determining both clear error and manifest injustice. *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012). The difficulty lies, however, in the lack of a definition of clear error for Rule 59(e) purposes in the Ninth Circuit. *Campion v. Old Republic Home Prot. Co.*, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011). The Ninth Circuit is not alone; "[c]ourts have generally not defined what constitutes 'clear error' under [that] Rule[.]" *Pet Food Express Ltd. v. Royal Canin USA, Inc.*, 2011 WL 6140874, at *4 (N.D. Cal. Dec. 8, 2011) (internal quotation marks and citation omitted). Given that lack of definition, as in *Campion* and *Pet Food Express*, courts routinely look to the "clearly erroneous" standard invoked in the context of the law of the case doctrine. In that context, "'clearly erroneous' is a very exacting standard [,]'" *Campion*, 2011 WL 1935967, at *1 (quoting *Hopwood v. Texas*, 236 F.3d 256, 273 (5th Cir. 2000) (citation omitted)), such that "a court should have a clear conviction of error." *Pet Food Express*, 2011 WL 6140874, at *4 (quotation marks and citation omitted). Thus, "[m]ere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice[.]" *Campion*, 2011 WL 1935967, at *1 (quoting *Hopwood*, 236 F.3d at 273 (citation omitted)). "To be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must be dead wrong." *Id*.

Within the Ninth Circuit, courts also have looked to Black's Law Dictionary, stating that "[a] manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *In re Wahlin*, 2011 WL 1063196, at *2 (Bankr. D. Idaho March 21, 2011) (quoting *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003); quoting in turn Black's Law Dictionary 563 (7th ed. 1999)). This definition comports with the Seventh Circuit's "high standard for a party filing a motion for reconsideration on the basis of error[.]" *Campion*, 2011 WL 1935967, at *1. In the Seventh Circuit, "the movant must demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id*. (citation and internal quotation marks omitted). By the same token, "manifest error of law is not merely a party's disagreement with how the trial court applied the law." *In re Wahlin*, 2011 WL 1063196, at *2. Nor is "[m]anifest error . . . demonstrated by the disappointment of the losing party." *Id*. (citations and internal quotation marks omitted).

"Rule 59 motions cannot be used to ask the Court to rethink what the court has already thought through, merely because a plaintiff disagrees with the Court's decision." *Ramsey v. Arizona*, No. 05-3130-PHX-JAT, 2006 WL 2711490, at *1 (D. Ariz. Sept. 21, 2006) (citations omitted). "Such disagreements should be dealt with in the normal appellate process." *Id*. (citations omitted). "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc*., 215 F.R.D. 581, 586 (D. Ariz. 2003). Similarly, "[r]econsideration may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to entry of an order." *Goodman v. Staples Office Store, LLC*, CV 08-0445-PHX-JAT, 2009 WL 4827204, at *1 (D. Ariz. Dec. 10, 2009) *aff'd in part, rev'd in part sub nom. Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011) *rev'd on other grounds*, 644 F.3d 817 (9th Cir. 2011). "Ultimately, a party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court

before rendering its original decision fails to carry the moving party's burden." *Teamsters*, 282 F.R.D. at 220 (citation omitted).

**B.     Analysis**

In their motion for reconsideration that fails to address Rule 59, Plaintiffs argue that (1) under the Arizona Employee Protection Act ("AEPA") Breeser's date of termination should have been March 16, the last day she received pay and benefits (Doc. 94 at 13-16), and (2) the discovery rule should have applied to toll the statute of limitations until on or after March 16 (*id*. at 16-18). In their Reply, where Plaintiffs first make their argument under Rule 59, Plaintiffs contend that the Court committed clear error in finding the statute of limitations began on March 1st when Breeser told the State of Arizona she was terminated because the Court based this decision on the wrong legal issue. (Doc. 96 at 2). In the Reply, Plaintiffs reiterate their first argument and explain that "how" the Court determined Breeser's date of termination was the wrong legal issue and thus, the Court committed a clear legal error. (*Id*. at 2-3). Oddly, Plaintiffs then contradict themselves and state "Defendant rephrases the issue [in the Response] as being one where Plaintiff claims this Court 'committed error' . . . . [t]his is not our position." (*Id*. at 7). The Court notes that if Plaintiffs' position is that the Court did not commit error then there is no basis for relief left under Rule 59. However, in the interest of clarity and because Plaintiffs' pleadings do in fact allege the Court committed clear error the Court will still address Plaintiffs' argument.

Plaintiffs repeatedly argue that Defendant misled and caused the Court to decide on the wrong legal issue with statements like Defendant "focused the Court's attention on the wrong legal issue and wrong law." (*Id*. at 2). Indeed, one of Plaintiffs headings states "DEFENDANT LED THE COURT INTO LEGAL ERROR AND DEFENDANT'S CONDUCT WAS MANIFESTLY UNJUST." (*Id*. at 7). As explained in the legal standard governing Rule 59 above, this rule concerns the Court's judgment and whether or not Defendant's conduct was manifestly unjust is irrelevant to the analysis.

These statements make it appear Plaintiffs believe the Court was or is incapable of reaching a conclusion based on the facts and the applicable law as it stands without the help

of the parties. The Court assures Plaintiffs' counsel that the Order granting summary judgment was reached under applicable Arizona law and not simply under what Defendant directed the Court to conclude. As explained above, if Plaintiffs feel the Court is wrong there is an appellate process to deal with such an occasion. Further, the Court reminds Plaintiffs' counsel that the burden rests with the plaintiff to argue the plaintiff's case, and explain why the law supports the plaintiff's claim, regardless of what the defendant argues. If counsel felt Defendant had misguided the Court to the wrong legal issue and the Court was incapable of researching and applying the applicable law on its own, it was up to counsel to point out the law supporting Plaintiffs' claim.

### 1.     Date of Termination

Plaintiffs' first argument appears to center on the Court's interpretation of the AEPA. Plaintiffs argue that Breeser's date of termination should have been March 16, the last day she received pay and benefits under the AEPA. (Doc. 94 at 13-16). Plaintiffs concede that in the Order the Court cited the correct statute governing the statute of limitations in a wrongful termination claim under the AEPA. (*Id*. at 2). In the Order the Court stated,

> The statute of limitations to bring a wrongful termination claim under the AEPA is one year and is found in A.R.S. §12-541(4). The statute of limitations states, "[t]here shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward" actions "[f]or damages of *wrongful* termination."

(Doc. 91 at 9) (citing A.R.S. § 12-541) (emphasis added). Plaintiffs try to parse this language and argue that the Court committed legal error because it determined that the statute of limitations began to accrue when Breeser was terminated and not on the date when she discovered that she was *wrongfully* terminated. (Doc. 96 at 2-3). Plaintiffs' argument proceeds that Breeser did not become aware she was wrongfully terminated until on or after March 16th when she received her last pay check and therefore the statute of limitations could not have begun to run until this date. Plaintiffs attempt to lay the blame on Defendant and claim it was Defendant's analysis, focusing solely on the date of alleged termination, that mislead the Court into not considering when Breeser realized she had been wrongfully

- 8 -

1 terminated.  (*Id*.).  Plaintiffs conclude that the Order was manifestly unjust because Defendant misled the Court into adopting the wrong standard for determining accrual—the date Defendant announced termination—instead of using the date Breeser discovered she was wrongfully terminated, which Plaintiffs argue is the correct standard under the AEPA. (*Id*. at 3).

Plaintiffs' argument is essentially that under Arizona law, the statute of limitations begins on the last day that the employee receives pay and/or benefits.  (Doc. 94 at 13 n.2); (Doc. 96 at 6-7).  Plaintiffs concede that "the record is clear, we accept [ ] the record supports the basis for the Court to find that March 1, 2009 was the date Defendant stated to [ ] Breeser she was terminated."  (Doc. 96 at 4-5).  Plaintiffs then rely on *Zenaty-Paulson v. McLane/Sunwest Inc.*, No. CIV-99-472-PHX-RCB, 2000 WL 33300666 (D. Ariz. Mar. 20, 2000), and *Haggerty v. Am. Airlines, Inc*., 102 F. Apppx. 623 (9th Cir. 2004) as the basis for their argument that the statute of limitations in an AEPA case, however, starts on the last day an employee receives pay and/or benefits.  (Doc. 94 at 13-16); (Doc. 96 at 7-10).  The Court finds Plaintiffs' argument does not warrant reconsideration for two reasons.

First, as Plaintiffs acknowledged in the pending Motion (Doc. 94 at 14), *Zenaty-Paulson* and *Haggerty* were both addressed in Defendant's prior motion for summary judgment (Doc. 74 at 8) and Reply (Doc. 90 at 5).  However, regardless of the reason, *Plaintiffs chose* not to address these cases in their prior response to Defendants motion for summary judgment (Doc. 81).  Nothing has changed in either case since this Court's Order. Consequently, no new argument based on these cases can possibly be made that was not available to Plaintiffs *prior* to the Order.  *See Goodman*, 2009 WL 4827204, at *1 ("[r]econsideration may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to entry of an order.").

Second, even if the Court were to consider these cases and Plaintiffs' argument, in spite of the clear legal standard governing Rule 59[2], these cases do not support Plaintiffs'

---

[2] *See also Teamsters*, 282 F.R.D. at 220 ("recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.").

- 9 -

current argument. In *Zenaty-Paulson*, the defendant employer claimed the statute of limitations began on February 24, 1997, the date the plaintiff employee received a letter from the defendant giving her a choice between demotion or termination, which effectively gave the plaintiff notice of her misrepresentation claim in that case. 2000 WL 333000666, at *14. The plaintiff employee argued that the statute of limitations began on the date of termination, March 14, 1997, and that the date of termination in that case was the date she received a letter of termination, i.e. notice, from the employer. *Id*. The court was faced with determining what event triggered the statute of limitations. *Id*. The court found that the statute of limitations began to accrue on February 28, 1997, because that was the date plaintiff had *both* stopped working and received her final paycheck. *Id*. at *15.

In the pending Motion, Plaintiffs argue the fact that the *Zenaty-Paulson* court found "most significant" in reaching this conclusion was that the employee did "not argue that [the employer] still owe[d] her money for the period between February 28 and March 14," when plaintiff received notice of termination from her employer. (Doc. 94 at 14). However, the *Zenaty-Paulson* court merely called this fact "significant." 2000 WL 333000666, at *15. Contrary to Plaintiffs' argument, no bright line test was established whereby all dates of termination are determined solely by the last day an employee is paid. The question is left open what would have happened had the plaintiff stopped working prior to February 28, but was still given her last pay check on February 28? In *Zenaty-Paulson*, the last day of pay was merely a significant factor the court considered in determining the date of termination given the circumstances of that case, because the last day of pay also aligned with the last day the plaintiff stopped working.

In *Haggerty*, the Ninth Circuit Court of Appeals merely affirmed the district court's holding that an employee's wrongful termination cause of action accrued, for purposes of the one-year statute of limitations under the AEPA, when his employer terminated his employment. 102 Fed.Appx. at 623. The date of the plaintiff's last day of payment was never considered or mentioned. The Court of Appeals did cite *International Union of Electrical Workers Local 790 v. Robbins & Myers, Inc*., 429 U.S. 229, 234-35 (1976), for the

1. proposition that a wrongful termination cause of action accrues on the date of termination. Contrary to Plaintiffs' argument here though, this case did nothing to parse the effect the last day of pay had on the court's consideration of the termination date. It merely stands for the proposition that the one year statute of limitations in an AEPA case starts on the termination date.

In citing *Haggerty*, Plaintiffs also cited *Electrical Workers Local 790* as precedent for their argument. (Doc. 94 at 16); (Doc. 96 at 8). Plaintiffs cite the holding of *Electrical Workers Local 790* as "the relevant date is the date the employee 'stopped working and received pay and benefits . . . .'" (Doc. 96 at 8) (citing 429 U.S. at 234-35) (emphasis in Plaintiffs' pleading). In that case, however, the United States Supreme Court held that October 25, 1971 was the date of termination because on that day the plaintiff (1) was notified of her termination, (2) stopped working, and (3) she ceased receiving pay and benefits. Like *Zenaty-Paulson*, in *Electrical Workers Local 790* the last day the employee received pay and benefits was but one of multiple factors the courts considered in determining the date of termination.

Unlike *Zenaty-Paulson* and *Electrical Workers Local 790*, the date Breeser stopped receiving pay, March 16th, was not the same day she stopped working nor was it the same day she was told she was terminated. March 1st was the day she was terminated and the day she stopped working. As the Court explained in its Order, March 1st is also the day Breeser explicitly told the Arizona Department of Economic Security that she was called on the phone by Hubble and told she was terminated. (Doc. 91 at 10-11) (citing Doc. 75-3 at 56). The Court chose not to analyze *Zenaty-Paulson* or *Haggerty* in its Order primarily because Plaintiffs did not address these cases in their arguments opposing summary judgment, and also because the Court did not have to address them to make its decision. The Court declined to find a contested issue of material fact in granting summary judgment to Defendant because Plaintiffs' counsel did not submit enough evidence to show there was a genuine dispute. Merely submitting a declaration whereby Breeser contradicted her own prior statement was not enough in this case. *See* (Doc. 91 at 12).

- 11 -

Accordingly, even if the Court were to consider Plaintiffs' arguments now, Plaintiffs have not met their burden to warrant reconsideration and shown the Court's decision was "dead wrong." *Campion*, 2011 WL 1935967, at *1. "A manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *In re Wahlin*, 2011 WL 1063196, at *2 (quoting Black's Law Dictionary 563 (7th ed. 1999)). Plaintiffs have made no such showing.

### 2. Discovery Rule

Plaintiffs also argue that the Court should have applied the discovery rule to determine when the statute of limitations began. Plaintiffs made this identical argument in their response to Defendant's motion for summary judgment (Doc. 81). As the Court pointed out in its Order, prior to judgment the extent of Plaintiffs' argument that the discovery rule applied consisted of a lone conclusory statement in their response where Plaintiffs' stated "since the law of Arizona is that the discovery rule governs accrual of the statute of limitations, a genuine issue of material fact exists." (Doc. 81 at 8). To raise this argument again, Plaintiffs now argue "in a case such as this involving a claim that the discovery rule applies to determine the accrual date, the Court must apply that standard." (Doc. 94 at 16). Plaintiffs apparently still think that merely invoking the discovery rule and declaring that it applies is all a party needs to do for the Court to apply such a rule. Plaintiffs are simply wrong.

As the Court has explained once before, it is not enough to just claim that the discovery rule applies. "That common law rule [the discovery rule], *if sufficient evidence supporting its application is presented*, may delay commencement of the time period within which suit must be filed." (Doc. 91 at 9) (quoting *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996)) (emphasis added). "The burden of establishing that the discovery rule applies to delay the statute of limitations rests on plaintiff." *Id*. (quoting *Logerquist*, 932 P.2d at 284). "Once the defendant has established a prima facie case entitling him to summary judgment on a statute of limitations defense, the plaintiff has the burden of

- 12 -

showing available, competent evidence that would justify a trial." *Id.* (quoting *Logerquist*, 932 P.2d at 284).

Plaintiffs now argue that they attempted to protect the record in their response to Defendant's motion for summary judgment by alerting the Court to the fact that there was an issue regarding application of the discovery rule and that Plaintiffs were relying on it. (Doc. 94 at 16). Plaintiffs explain that Defendant misled the Court in its reply by only quoting part of Plaintiffs' amended complaint. (*Id.* at 17). Ultimately, Plaintiffs contend that had Defendant raised the issues in its motion for summary judgment, "Plaintiff would have been able to fully extricate the law regarding the discovery rule and would have cited the facts and exhibits supporting the fact that Plaintiff's cause of action under A.R.S. § 23-1510 did not accrue until after March 15, 2009 with alacrity." (*Id.* at 18). Plaintiffs' argument is misguided given the Court's explanation of Arizona law.

In their motion for summary judgment, Defendant established a prima facie case entitling them to summary judgment on a statute of limitations defense. Plaintiffs had the burden at that point establish that the discovery rule applied. All of the evidence Plaintiffs now claim establishes the discovery rule should have applied was available to Plaintiffs to present at the time they filed their response to Defendant's motion for summary judgment. Plaintiffs failed to present this evidence at that time. Plaintiffs present no evidence now that was not available to them prior to the Court's Order. *See Goodman*, 2009 WL 4827204, at *1 ("[r]econsideration may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to entry of an order."). The Court makes no determination of whether this evidence actually establishes that the discovery rule should have applied.

Further, in contending that the discovery rule should have applied Plaintiffs make no argument that the Court committed clear error or explain how the Court's finding—of whether Plaintiffs presented enough evidence *before* the Order to establish that the discovery rule should have applied—was manifestly unjust. Plaintiffs argue that the result is manifestly unjust to Plaintiffs' position. However, as explained above, *see supra*, Section

1  II.A, that is not the standard of manifest injustice that the Court must apply. Plaintiffs have
2  not shown that the Court was "dead wrong" in its decision given the evidence Plaintiffs
3  presented to the Court before entering judgment. *See Campion*, 2011 WL 1935967, at *1.

## IV.    CONCLUSION

Based on the forgoing,

**IT IS ORDERED** that Plaintiffs' Motion to Alter or Amend Judgment (Doc. 94) is denied.

Dated this 24th day of June, 2013.

James A. Teilborg
Senior United States District Judge